IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEREMIAH THOMASSON,

        Petitioner,

  v.

DON PALMER and ELLEN ROSENBLUM,

        Respondents.

Case No. 3:14-cv-01340-SU

FINDINGS AND RECOMMENDATION

Anthony D. Bornstein
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

    Attorney for Petitioner

Ellen F. Rosenblum, Attorney General
Samuel A. Kubernick, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

    Attorneys for Respondent

1 – FINDINGS AND RECOMMENDATION

SULLIVAN, Magistrate Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his state-court convictions for Attempted Murder, Assault, Unlawful Use of a Weapon, and Menacing. For the reasons that follow, the Petition for Writ of Habeas Corpus (#1) should be denied.

## BACKGROUND

On June 30, 2009, petitioner attended a public auction at the Woodburn Auction Yard. For reasons that are not entirely clear, he became "frustrated and impatient." Respondent's Exhibit 104, p. 4. He jumped up on the auctioneer's stand, took out a box cutter, and slit the throat of the auctioneer, Charles Boyce, "completely from one side to the other." *Id*.

Petitioner fled the scene with four bystanders in pursuit. The bystanders were able to corner him, but petitioner escaped when he threatened the men with his box cutter. Police located petitioner later that day and arrested him. Boyce received prompt medical attention and survived.

The Marion County Grand Jury indicted petitioner on one count of Attempted Murder, one count of Assault in the First Degree, five counts of Unlawful Use of a Weapon, and Four counts of Menacing. Respondent's Exhibit 102. Petitioner's first attorney, Larry Seto, notified the court of his intent to rely upon insanity and diminished capacity defenses, and requested that Dr. George R. Suckow conduct a psychiatric evaluation of petitioner. Dr. Suckow found as follows:

2 – FINDINGS AND RECOMMENDATION

> In my opinion Mr. Thomasson is able to aid and assist in his own defense and to participate in courtroom proceedings at this time. He has largely cleared his delusional disorder simply by enforced abstinence from amphetamines. He is not currently on any medication.
>
> It is my further opinion that at the time of the alleged offense, the attempted murder for which he is charged under the above [ ] mentioned case . . . which occurred on or about June 30, 2009, he was suffering from hallucinations which were induced by chronic amphetamine abuse and overdose. Due to that intoxication, he was not able to conform his conduct to the requirements of law.
>
> \* \* \* \* \*
>
> In summary, this is a young man who has had a less-than-auspicious start in life who was over-utilizing methamphetamine on a habitual and regular basis and developed hallucinations because of that. He is unable to recall the circumstances of his alleged attack upon the victim in this case but he does admit to the use of amphetamines heavily prior to the event and he was still showing signs of amphetamine intoxication at the time he was jailed.

Respondent's Exhibit 119.

On December 29, 2004, attorney James Susee (hereinafter "counsel" or "trial counsel") replaced Seto as counsel of record. The parties ultimately agreed upon a plea agreement whereby petitioner pleaded no contest to all counts in the Indictment, the State recommended a sentence of 360 months in prison as opposed to the 480-490 months it originally sought, and petitioner was permitted to argue for a lesser sentence. Respondent's Exhibit 103. The trial court accepted the plea and

3 – FINDINGS AND RECOMMENDATION

ultimately sentenced petitioner to 360 months in prison. Respondent's Exhibits 104 & 105.

Petitioner did not take a direct appeal, but he did file for post-conviction relief ("PCR") in Malheur County. Among petitioner's claims of ineffective assistance of counsel, he alleged that trial counsel was ineffective for failing to ensure that his plea was knowing, voluntary, and intelligent. The PCR court denied relief on all of petitioner's claims. Respondent's Exhibits 133 & 134. The Oregon Court of Appeals affirmed the lower court's decision without opinion, and the Oregon Supreme Court denied review. *Thomasson v. Nooth*, 261 Or. App. 477, 325 P.3d 844, *rev. denied*, 355 Or 568, 329 P.3d 771 (2014).

Petitioner filed this 28 U.S.C. § 2254 habeas corpus case on August 20, 2014 in which he raises four grounds for relief which contain a variety of sub-claims. Respondent asks the court to deny relief on the Petition because: (1) petitioner does not provide argument in support of many of his claims, and thus has not carried his burden of proof as to those claims; (2) most of petitioner's claims are procedurally defaulted; and (3) the PCR court's denial of relief as to the claims that are properly before this court was not objectively unreasonable.

## DISCUSSION

I. **Standard of Review**

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as

4 – FINDINGS AND RECOMMENDATION

determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent."  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id* at 413.  The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous.  *Id* at 410.  Twenty-eight U.S.C. § 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.  It goes no farther."  *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Twenty-eight U.S.C. § 2254(d)(2) allows a petitioner to "challenge the substance of the state court's findings and attempt to show that those findings were not supported by substantial evidence in the state court record."  *Hibbler v.*

5 – FINDINGS AND RECOMMENDATION

*Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012). A federal habeas court cannot overturn a state court decision on factual grounds "unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). This is a "'daunting standard—one that will be satisfied in relatively few cases,' especially because we must be 'particularly deferential to our state-court colleagues." *Hernandez v. Holland*, 750 F.3d 843, 857 (9th Cir. 2014) (quoting *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004)).

## II. Unargued Claims

As previously noted, petitioner raises a variety of claims in his Petition. In his supporting memorandum, however, petitioner chooses to brief two claims of ineffective assistance of counsel: (1) whether counsel failed to ensure that the no-contest plea was knowing, intelligent, and voluntary; and (2) whether counsel was ineffective at sentencing when he failed to present mental health evidence and further failed to challenge a ground for enhancing petitioner's sentence.

Petitioner does not argue the merits of his remaining claims, nor does he address any of respondent's arguments as to why relief on those claims should be denied. As such, petitioner has not carried his burden of proof with respect to the unargued claims. *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (petitioner bears the burden of proving his claims). Even if petitioner had briefed the merits of the unargued claims, the court has examined them based upon the existing record and determined that they do not entitle him to relief.

6 – FINDINGS AND RECOMMENDATION

## III. Exhaustion and Procedural Default

Petitioner's claims involving sentencing allege that trial counsel was ineffective when he failed to raise petitioner's mental health as a mitigating issue, and failed to object to the imposition of upward departure sentences on the Unlawful Use of a Weapon charges. Respondent asserts that petitioner failed to fairly present these claims because he did not pursue them during his PCR appeal, leaving them procedurally defaulted. *See Rose v. Lundy*, 455 U.S. 509, 519 (1982) (requiring habeas petitioners to fairly present their claims to their state's highest court); *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (claims that may no longer be fairly presented are procedurally defaulted). Petitioner does not disagree with this characterization, but asks the court to excuse his procedural default because his PCR appellate attorney's decision not to pursue the claim amounted to attorney abandonment.

In *Maples v. Thomas*, 132 S.Ct. 912, the Supreme Court held that abandonment by post-conviction counsel could provide cause to excuse a procedural default. Here, although petitioner's PCR appellate attorney did not pursue a claim petitioner wishes to raise in this proceeding, he did file an appellate brief faulting trial counsel for not ensuring that petitioner's no-contest plea was knowing, voluntary, and intelligent. Respondent's Exhibit 135. Appellate counsel's decision to winnow down petitioner's claims on appeal in no way constitutes the kind of abandonment contemplated by *Maples,* a case where the petitioner's attorneys caused his default when they left their firm and left petitioner

7 - FINDINGS AND RECOMMENDATION

"without any functioning attorney of record." *Id* at 927. Accordingly, petitioner is unable to excuse his default.

### III. Ineffective Assistance of Counsel: Voluntariness of Plea

As his final claim, petitioner argues that trial counsel failed to ensure that his no-contest plea was knowing, voluntary, and intelligent. Specifically, he claims that counsel failed to properly advise him of the potential benefits of raising a lack of intent defense supported by Dr. Suckow's psychiatric evaluation. Because no Supreme Court precedent is directly on point that corresponds to the facts of this case, the court uses the general two-part test established by the Supreme Court to determine whether petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). First, petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is whether the petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. In proving prejudice, a petitioner who has pleaded guilty or no contest to an offense must demonstrate that there is a reasonable probability that, but for counsel's errors, he would not have

8 – FINDINGS AND RECOMMENDATION

entered such a plea and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 556 U.S. at 122.

During petitioner's PCR trial, the State introduced trial counsel's Affidavit which reads, in relevant part, as follows:

> 2. Mr. Thomasson's allegation that I failed to ensure that Mr. Thomasson's plea was knowingly, voluntarily and intelligently made is incorrect. The state had 26-30 witnesses for their side, while I had relatively few witnesses. I also had a lot of difficulty dealing with my client. After reviewing the state's discovery, the police reports, and discussing the case with my client, I told Mr. Thomasson and his mother that the only potential defense we had was a mental disease or defect defense. But they were dead[]set against me raising a defense of mental disease or defect of any kind, including one involving methamphetamines-induced psychosis. Mr. Thomasson was certainly not an easy client to deal with and frequently got himself in trouble at the Marion County Jail during the pendency of his case.

> \* \* \* \* \*

> 4. Dr. Suckow's evaluation said [petitioner] could aid and assist, however his evaluation indicated the defendant had a methamphetamine-induced psychosis. It would not be a complete defense, but it helped rebut intent. In my professional opinion and in my experience in practicing in Marion County, I don't believe Dr. Suckow's evaluation would have affected plea negotiations, although it might have affected the trial outcome.

9 – FINDINGS AND RECOMMENDATION

> \* \* \* \* \*
>
> 9.   Mr. Thomasson asserts that I failed to adequately present Mr. Thomasson's mental health defense. But that runs contrary to what happened when I represented him. As I've explained above, Mr. Thomasson and his mother were adamantly opposed to presenting a mental health defense. Mr. Thomasson understood that by accepting the state's plea offer he would waive his right to present any defense, including a mental health defense, at trial. Even after sentencing, Mr. Thomasson's mother expressed an adamant refusal to explore the mental disease or defect defense in a post-conviction action.

Respondent's Exhibit 131, pp. 1-4.

The PCR court found as follows:

> There were no factual defenses to this case based on the number of witnesses, the physical evidence that was found. The only defense was the use of methamphetamine. Two judges told the attorney (inaudible) that defense had never worked in, I believe it was Marion County.
>
> \* \* \* \*
>
> The DA would have recommended [a greater sentence] had the case gone to trial, so there was certainly a benefit to Mr. Thomasson at least doing anything he could do to shorten the sentence. It's not a great deal, but it's better than going to trial and getting the sentence that was available then.
>
> The sentence is not excessive based on the facts of this case the Petitioner has a history of violence. The Petitioner and his mother were adamant that the attorney could not use the guilty except for insanity defense. The plea was knowing, voluntary and intelligent.

Respondent's Exhibit 133, pp. 13-14.

10 - FINDINGS AND RECOMMENDATION

Petitioner asserts that the PCR court's decision is flawed for a variety of reasons. First, it appears petitioner's mother was influential in the decision-making process pertaining to a mental defense. He contends that he, not his mother, should be responsible for the decision to proceed to trial and counsel should not have thwarted his ability to raise such a defense by allowing his mother's opinion to sway his advice.

In addition, he asserts that the PCR court's decision speaks in terms of an insanity defense, when his claim is that counsel should have informed him as to a partial responsibility defense. On this point, he claims that there is no evidence in the record that counsel explained a partial responsibility defense to petitioner, or that the two judges who advised counsel that a mental defense would not work in Marion County were speaking about a partial responsibility defense as opposed to an insanity defense. He also contends that the statements by these judges did not take into account Dr. Suckow's supportive psychiatric evaluation, or that lack of intent due to drug-induced psychosis did not carry the same stigma or legal consequences associated with an insanity defense.

Moreover, petitioner asserts that no one ever explained how the State could have obtained a 480-month sentence had he proceeded to trial and lost, and that if that figure was based upon consecutive maximum upward departures, that result was highly unlikely where he suffered from such mitigating factors as PTSD, amphetamine-induced psychosis, and hallucinations at the time of the event. He faults the PCR court for simply accepting

11 – FINDINGS AND RECOMMENDATION

that petitioner faced the possibility of a 480-month sentence had he proceeded to trial and presented an unsuccessful defense.

The State points out that the arguments petitioner now makes in this proceeding through appointed counsel are different than those he raised to the PCR court. It asserts that petitioner focused on counsel's failure to present an insanity defense, but did not alert the PCR court as to his current claim predicated upon a partial responsibility defense. Where petitioner presented the PCR court with a claim of attorney error based upon counsel's alleged failure to raise a mental defense on his behalf that resulted in an unintelligent no-contest plea, the court finds petitioner gave the Oregon state courts a fair opportunity to pass upon the claim he now argues.

Turning to the merits of petitioner's claim, a review of the record does not establish that counsel failed to advise petitioner of the availability of a partial responsibility defense. In his Affidavit, counsel stated that he advised petitioner that the only potential defense was a mental defense. Respondent's Exhibit 131, p. 2. This was presumably based upon Dr. Suckow's psychiatric evaluation wherein he concluded that petitioner's violent attack upon the victim in this case was due to amphetamine use. From this record, the court cannot conclude that counsel failed to advise petitioner of the mental defenses available to him, including a partial responsibility defense. Indeed, even where petitioner's claims at the PCR court were couched in terms of an insanity defense, counsel was aware that the "methamphetamine-induced psychosis . . . would not be a

complete defense, but it helped rebut intent" and "might have affected the trial outcome." Respondent's Exhibit 131, p. 3.

In addition, while petitioner faults counsel for allowing petitioner's mother to have an impact on her son's decision-making process, it is difficult to conclude how an attorney could require a 23-year-old client who apparently relied heavily upon his mother's advice to eschew that advice. Whether petitioner's mother was present for some of the discussions at issue likely would not have changed the level of influence she exerted in petitioner's decision-making process. It is also significant that, although influenced by his mother, petitioner himself was adamant that he would not pursue a mental defense. Respondent's Exhibit 131, pp. 2, 4. Faced with this reality as well as the uniquely unfavorable facts underlying a crime committed on a stage in front of hundreds of witnesses, counsel negotiated the best deal possible.

Although petitioner believes a sentence of 480 months was highly unlikely had he proceeded to trial, he has not established that such a sentence was unavailable under Oregon law. More importantly, it appears the PCR court found such a sentence to be permissible. Respondent's Exhibit 133, p. 13; *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Petitioner therefore cannot persuasively claim that having his sentence capped at 360 months with an opportunity to argue for a lesser sentence amounted to illusory benefit.

13 - FINDINGS AND RECOMMENDATION

Although not required to do so, the court has independently reviewed the record in this case due to the shifting nature of petitioner's claim as noted by the State. Based upon this independent review, counsel's performance did not fall below an objective standard of reasonableness. Petitioner also fails to demonstrate prejudice where he has not established that but for any error, he would have insisted on proceeding to trial in lieu of a plea. Accordingly, the PCR court's decision is neither contrary to, nor an unreasonable application of, clearly established federal law.

## RECOMMENDATION

For the reasons identified above, the Petition for Writ of Habeas Corpus (#1) should be denied and a judgment should be entered dismissing this case with prejudice. The court should decline to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

## SCHEDULING ORDER

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due within 14 days. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

///
///
///
///
///

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 21st day of November, 2016.

                                              ___/s/ Patricia Sullivan___
                                                  Patricia Sullivan
                                                  United States Magistrate Judge